### In re Todd B. MORAN and Mary Moran, Debtors.

### Bankruptcy No. 96 B 06133.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 1, 1998.

---

Andrew J. Maxwell, Trustee, Chicago, IL, for movant.

Todd and Mary Moran, Pro Se.

## MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Chief Judge.

This matter came before the Court on the Trustee's Application to Approve Compromise of Lawsuit, for Authorization for Pay Special Counsel, for Authorization to Make Interim Distribution to Debtor and for Other Relief. A hearing was held on September 8, 1998 and an order was entered by this Court approving the subject settlement. Left for resolution was the issue of whether the costs expended in the debtors' personal injury lawsuit are to be paid out of the attorneys' share of the settlement proceeds, out of the gross settlement prior to paying the attorneys' contingency fee or are to be paid directly out of the debtors' share of the settlement.[1]

### Background

This case was commenced by Todd B. Moran and Mary Moran voluntarily filing a petition for relief under Chapter 7 of the Bankruptcy Code on or about March 11, 1996. A trustee ("Trustee") was appointed and qualified. The first meeting of creditors was held.

---

1. Also left for resolution were two issues regarding the payment of claims. Those issues will be resolved in a separate memorandum opinion.

The Trustee identified as an asset of the estate the debtors' interest in a lawsuit pending in the Circuit Court of Cook County for damages arising from personal injuries encaptioned *Todd B. Moran and Mary Moran v. Illinois Sports Facilities Authority, Near North Insurance Agency, Inc., an Illinois Corporation, Chicago White Sox Limited, an Illinois Limited Partnership* (the "Lawsuit").[2]

The Lawsuit arose from an accident in which Mr. Moran suffered a serious injury on or about October 16, 1991. In or about August of 1992, Mr. Moran hired James A. Coghlan Ltd. ("Coghlan Firm") to represent him in the Lawsuit. The Trustee applied to this Court in or about August of 1996 to employ the Coghlan Firm as special counsel to liquidate the Morans' rights in the Lawsuit.

The order authorizing the Coghlan Firm's retention states in pertinent part as follows:

> Compensation for Trustee's special counsel is approved pursuant to the terms set forth in the contingent fee agreement made between Debtor and proposed special counsel, a copy of which is attached to and made a part of the Unsworn Declaration attached to the Application. In addition to fees for legal services, Trustee's special counsel shall be entitled to reimbursement for costs expended, but only if and to the extent there is a recovery from the lawsuit. Payment of any and all compensation and reimbursement of expenses to Trustee's special counsel shall be subject to further application and approval of this Court.

The contingent fee agreement to which the order refers makes no mention of the payment of expenses. Neither Mr. Coghlan's declaration submitted with the Trustee's application nor the application itself mentions expenses. Both documents refer solely to the fee agreement. Mr. Moran testified at the hearing that the issue of expenses did not come up at the time of the signing of the fee agreement. Mrs. Moran testified that the issue of expenses was not mentioned by any-

one from the Coghlan Firm until the first settlement offer was made in June of 1998.

On or about August 6, 1998 the Lawsuit was settled before the Honorable Richard Elrod in the Circuit Court of Cook County subject to this Court's approval. The Trustee is to receive $540,000 in settlement proceeds. Out of that money, the Trustee requested permission to pay $150,000 to Liberty Mutual Insurance Company in satisfaction of its worker's compensation lien, $179,982 to the Coghlan Firm in satisfaction of attorneys' fees figured at 33% of the gross settlement and $11,969.31 to the Coghlan Firm in satisfaction of costs it expended. The balance would be used to pay claims scheduled in the bankruptcy case and the surplus would go to the debtors.

A hearing was held on September 8, 1998. The Trustee put on his case for the settlement, which included witnesses and documents. The Morans, who were not represented at the hearing, had the opportunity to question the witnesses and to make sworn statements. The Morans expressed their deep disappointment with the settlement based on representations that had been made to them by Mr. Coghlan and his associates about the value of the lawsuit. They explained that the attorneys told them that the case was worth $3.2 million dollars. The Morans' testimony regarding what they were told about the reimbursement of expenses was unclear. The Court surmises that expenses were not a significant issue at the time that the Morans and their counsel believed that they were anticipating a multimillion dollar recovery.

An associate of the Coghlan Firm testified about the problems that developed with the case as it progressed, including changes in Illinois law that worked to the Morans' detriment. He testified that the Circuit Court's release of certain defendants seriously and adversely affected the Morans' case and that his firm vigorously but unsuccessfully prosecuted an appeal. The Morans reluctantly agreed to the settlement. However, they argued that the expenses of the litigation

---

2. During the litigation of the lawsuit, orders were entered dismissing all of the defendants except the Chicago White Sox Limited.

should not be borne by them and the Court took the issue under advisement.

### Discussion

The Coghlan Firm argues that Illinois law prevents an attorney from assuming ultimate responsibility for the costs and expenses of a litigation. It cites *Partee v. Compton*, 273 Ill.App.3d 721, 210 Ill.Dec. 549, 653 N.E.2d 454 (5th Dist.1995) and *Schlosser v. Jursich*, 87 Ill.App.3d 824, 43 Ill.Dec. 257, 410 N.E.2d 257 (2nd Dist.1980). In *Schlosser*, 87 Ill. App.3d 824, 43 Ill.Dec. 257, 410 N.E.2d 257, the Court considered the issue of whether an attorney can be ordered to pay costs in a personal injury suit when the contingency fee contract made no provision for the payment of expenses. The Court opined that "[i]t has long been the rule in Illinois that a contingency fee contract requiring the attorney to assume ultimate responsibility for costs and expenses of litigation is champertous and void as against public policy [citations omitted]. This view has been reiterated in the [then] newly adopted Code of Professional Responsibility (Supreme Court Rule 5—103(b)) ..." *Id.* at 825–826, 43 Ill.Dec. 257, 410 N.E.2d at 258.

The Rule on which the *Schlosser* Court relied provided as follows:

(b) While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

Code of Professional Responsibility, Canon 5, Rule 5–103(b)(West 1989)(effective July 1, 1980).

*Partee v. Compton*, 273 Ill.App.3d 721, 210 Ill.Dec. 549, 653 N.E.2d 454 (5th Dist.1995), also cited by the Coghlan Firm, is inapposite to this case. The fee agreement at issue in that case like the one in this case contained no language regarding expenses. However, there the clients argued that the agreement was void in its entirety because it did not comply with the requisites of the Code of Professional Responsibility and that the attorney was not entitled to a large portion of his fee. The Court refused to allow the clients to reap the benefits of a contract and then render it void. There has been no such argument made in this case and the Morans have not raised the issue of not paying the Coghlan Firm at all. Also significant is the fact that the *Partee* Court relied on the 1980 version of the Code of Professional Responsibility even though it is a 1995 opinion because the agreement in that case was executed when the Code was still in effect.

In August of 1990 the Code of Professional Responsibility was repealed and the current Rules of Professional Responsibility ("RPC") became effective, two years before the fee agreement in this case was executed. The Supreme Court of Illinois amended the rule regarding expenses to provide as follows:

(d) While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to the client, except that a lawyer may advance or guarantee the expenses of litigation, including, but not limited to, court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, if:

(1) the client remains ultimately liable for such expenses; or

(2) the repayment is contingent on the outcome of the matter; or

(3) the client is indigent.

Illinois Rules of Professional Conduct, Art. VIII, Rule 1.8(d)(West 1997)(effective August 1, 1990). The Coghlan Firm never brought this amendment to the Court's attention nor did it mention that the cases it relied upon were predicated on a repealed version of the Code of Professional Responsibility.

The amendment to the rule adds two more conditions under which an attorney can pay the costs and expenses of a litigation. The repayment may be contingent on the outcome of the case or the client may be excused from the repayment if indigent. In sub-sub-section (3), the client need not be ultimately liable for the costs and expenses at all. Clearly this evidences a shift in the

Supreme Court's view on this subject and demonstrates a softening of that view. This Court's review of the case law in this area did not uncover any precise authority under the new RPC.

What the Court did find however was Rule 1.5 of the RPC which provides in pertinent part as follows:

(c) A fee may be contingent on the outcome of the matter for which the service is rendered.... A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, ... litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated....

Illinois Rules of Professional Conduct, Art. VIII, Rule 1.5(c)(West 1997)(effective August 1, 1990).

■■■ This Court cannot rely on the conclusion reached by the *Schlosser* Court insofar as it predicated its ruling on the repealed Code of Professional Conduct. Nonetheless, the *Schlosser* Court was correct in its declaration that "[t]he relationship between attorney and client is a fiduciary one requiring good faith, fairness and full disclosure .... attorneys are under a particularly sensitive obligation to explain carefully and completely the allocation of expenses associated with legal representation." *Schlosser*, 87 Ill. App.3d at 826, 43 Ill.Dec. 257, 410 N.E.2d at 258.

■ Clearly this was not done in this case. The contingency fee agreement in this case was on a form prepared by the Coghlan Firm and contains no provision regarding the payment of expenses. The Morans testified that the issue of expenses was not raised until early this year.

There is no question that the fee agreement violated the RPC. The order retaining the Coghlan Firm entered by this Court was prepared by the Trustee. It contains language providing for the repayment of expenses but that language contradicts the fee agreement it references as well as the application itself. The cases cited by the Coghlan Firm balanced the public policy of prohibit-

ing champertous transactions against attorneys' obligations to provide fair, full disclosure to the clients to whom they owe a fiduciary duty. This Court has balanced the same interests and also considered the Supreme Court's amendment to its rule against champertous transactions. While the Court was impressed with the lengths to which the Coghlan Firm went to obtain a good result for its clients, its failure to comply with the RPC is a serious breach of its ethical obligations.

■ Furthermore, the Coghlan Firm failed to comply with Rule 3.3(a)(3) of the RPC which provides that "[i]n appearing in a professional capacity before a tribunal, a lawyer shall not: ... fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; ...." The Coghlan Firm never brought to this Court's attention the fact that the cases it relied upon were predicated on a repealed version of the Code of Professional Responsibility.

■ Pursuant to its powers under 11 U.S.C. § 105(a) to make a determination necessary or appropriate to enforce court rules, the Court considers it appropriate to sanction the Coghlan Firm in the amount of the outstanding expenses of $11,969.31 for failing to comply with Rules 1.5 and 3.3 of the Illinois Rules of Professional Responsibility.

The fee agreement provides for the attorneys' fees to be calculated on the gross amount of the recovery and the Court will not disturb that portion of the agreement.

### Conclusion

For the foregoing reasons, the Court grants the Trustee's application insofar as it requests authorization to pay James A. Coghlan, Ltd. the sum of $179,982 in full and final satisfaction of its fees pursuant to the contingent fee agreement and authorization to pay to Todd B. Moran and Mary Moran the sum of $100,000 as an interim distribution of surplus proceeds. The Coghlan Firm is sanctioned in the amount of the outstanding expenses of $11,969.31. In full satisfaction of the sanction, the Trustee's application is denied insofar as it requests authorization

to reimburse to James A. Coghlan, Ltd. the sum of $11,969.31.